BURROWS *against* HOLT and others.

*New-London,*
July, 1850.

Burrows
*v.*
Holt.

In *December*, 1794, *A* executed a deed of a parcel of land to *B* and six other persons, described " as trustees of the *Methodist Society ; habendum* to said grantees, in their capacity aforesaid of trustees ;" the *cestui que trust* being an unincorporated association. In 1848, *B* became the sole survivor of such grantees; his title under the deed having never been extinguished, by any release or other act of his. After the grant, the *Methodist Society* used and occupied the granted premises, for more than fifteen years, in support and furtherance of the object contemplated by the deed. In an action of ejectment, brought by *B*, against members of the *Methodist Society*, assuming to act officially, it was held, 1. that *B* and the other grantees had a freehold estate in the premises of such a duration as was necessary to effect the purposes of the trust; 2. that the title of *B* had not been divested, by the occupation of the defendants ; such occupation not having been adverse to *B's* title.

THIS was an action of ejectment, to recover the seisin and possession of a tract of land in *New-London*, with a meeting-house standing thereon ; of which, the plaintiff averred, he was, on the 1st of *April*, 1848, well seised and possessed, as trustee for a certain association of *Christians*, called and known by the name of the *Methodist Society* of *New-London*, and so continued until the 20th of *August*, 1848, when the defendants entered and ejected him.

The cause was tried, on the general issue, at *Norwich*, *March* term, 1850.

On the trial, the plaintiff claimed title to the demanded premises, by virtue of a deed, dated the the 16th day of *December*, 1794, from *Timothy Green*, to *Daniel Burrows*, *Richard Douglass*, *George Potter*, *Peter Griffin*, *Isaiah Bolles*, *Luther Gale* and *John Shepard*, described " as trustees in behalf of the *Methodist Society*, so called, in *New-London:*" *habendum* " to said grantees, in their capacity aforesaid of trustees for said *Methodist Society* in *New-London*, and their successors in said capacity and assigns, to their only use and behoof." The deed contained the usual covenants, which were with the grantees, "and their successors, in the capacity of trustees as aforesaid."

The title of the plaintiff's grantor and the disseisin and possession of the defendants, were not in dispute on the trial; it being admitted, that such grantor had title to the premises, and that the defendants had disseised the plaintiff, and were holding him out of possession at the time this action was

New-London,
July, 1850.

Burrows
v.
Holt.

brought, and that the plaintiff was the sole survivor of the grantees named in said deed.

The defendants claimed to have proved, that all the grantees, named in said deed, had, more than fifteen years before the commencement of this action, ceased to act as trustees under said deed, or to claim any interest in or title to, or controul over the premises; that, as the original trustees named in said deed died, or removed from *New-London*, or ceased to act as trustees, the remaining trustees, from time to time, supplied, by their own appointment, other persons to be trustees, in the place and stead of those so dying, removing or ceasing to act; and thereupon the persons so appointed claimed to be trustees for the *Methodist Society* named in said deed, and acted in that capacity, and from time to time, as they saw occasion therefor, closing the meeting-house on the premises and excluding therefrom the preachers at such times preaching in said house.

The defendants offered further evidence to prove, that about forty years ago, the plaintiff removed from *New-London*, where he then resided, to *Hebron*, and thence afterwards to *Middletown*, where he has ever since resided, having never since such removal from *New-London*, asserted any right, title or interest in, or exercised any controul over, the premises, until the commencement of this action; that in the year 1830, difficulties existing in said society, as to the use of the meeting-house, by preachers then preaching there, and the number of persons acting as trustees being then less than seven, the plaintiff was applied to, to exercise his power and authority and to act as one of the trustees, under said deed; but he refused so to do, declaring that he had long since ceased to be a trustee, that another had been chosen in his stead, and that he had nothing more to do in the premises than though he had never been a trustee, and advising that new trustees, sufficient to make up the number of seven, should be supplied, by those who remained; that this was done; and that it continued to be done, from time to time; and that the defendants are in possession of the premises, as trustees so appointed.

Under these circumstances, the defendants claimed, that by such relinquishment of the plaintiff, and such adverse holding, by those claiming to be and so acting as trustees,

New-London,
July, 1850.

Burrows
v.
Holt.

since the plaintiff removed from *New-London*, the title of the plaintiff to the premises was barred and lost ; and that, if any relinquishment by deed of his title was requisite, to divest him of his title and interest in the premises, the jury, from the facts aforesaid, were authorized to presume such grant or relinquishment ; and they prayed the court so to instruct the jury.

The plaintiff denied, that there had been any adverse holding of the premises, as claimed by the defendants ; or that the plaintiff had made the declarations imputed to him ; and that there were any such facts proved as raised the presumption of, or authorized the jury to infer or presume the existence of, any grant or release of the premises, as claimed by the defendants ; and he claimed to have proved, that from the date of the deed from *Timothy Green* to the disseisin stated in the declaration, the premises had always been and were used and occupied solely by the *Methodist Society* mentioned in that deed, for whose use they were granted ; that such use and occupation was always under and in accordance with said deed ; and that said society had always worshipped in said house, under the ministration of preachers of their order and denomination, and by the sufferance and permission of the grantees named in said deed and their survivors, and of the plaintiff, while he was the sole survivor, and without interference or obstruction from the trustees named in said deed, or those elected as aforesaid, or any of them, or any other person, during all said time.

The court charged the jury, that the legal title to the premises might be divested, either by an adverse possession for fifteen years or upwards, on the part of those from time to time elected or acting as such trustees, or by a release from the plaintiff ; that whether such title was divested, in either of those modes, were questions of fact for the jury to determine ; that although vacancies occurring in the number of the original trustees, or among those whom they elected to fill such vacancies, were supplied, by those who remained, by the election of persons who were called trustees, and those persons so elected had claimed to be such trustees and acted as such ; yet if the persons so elected had, by the sufferance or permission of the plaintiff, appropriated the property in question to the use, occupation and enjoyment of said *Methodist Society*, and for the purposes for which it was conveyed ;

this would not be such an adverse possession of the property, as that the plaintiff's title would be divested thereby; and that this would be the case, even if the plaintiff, or the persons so elected, believed, that, by such election of said persons, no conveyance having been made to such persons, they, the persons so elected, acquired the legal title to the property, and that the plaintiff became divested of it: But that, if the persons so elected took and held possession of the property, claiming title in themselves, and appropriated it to the use of those for whose use or benefit it was not conveyed by said deed, such possession would be adverse, and if continued for the period of fifteen years, would divest the title of the plaintiff. And in respect to the claim of the defendants, as to the right of the jury to presume a grant or relinquishment by deed from the plaintiff of his title, the court charged the jury in conformity with the claim of the defendants, leaving it for the jury to determine from the evidence, whether the plaintiff had been divested of his title, by an adverse possession, as claimed by the defendants, or by a grant, release or relinquishment by deed of such title.

The jury found a verdict in favour of the plaintiff; and the defendants moved for a new trial for a misdirection.

*Strong* and *Lippitt*, in support of the motion, contended, 1. That the provisions of the deed shewed, that the estate conveyed was designed to be held by the grantees, as officers of the *Methodist Society.* They are described in the deed as trustees of that society. Were there nothing to vary the effect in the subsequent part of the deed, and in the acts of the grantees under it, they might have taken a life estate; as in the ordinary case of a grant to an individual, without words of inheritance. But the *habendum* and subsequent parts of the deed, limit and qualify this grant. It is there provided, that the estate shall be held by them, in their capacity of trustees, and by their successors and assigns. The covenants, also, are with them and their assigns. The estate of the grantees, therefore, continued only so long as they sustained the office or place of trustees, and acted in that capacity; it not being granted to them for their *lives,* by any express words. 4 *Kent's Com.* 9. 2 *Bla. Com.* 109. *Co. Litt.* 27. *a. Com. Dig. tit.* Estates. A. 6.

New-London,
July, 1850.

Burrows
v.
Holt.

2. That it makes no difference, that when these trustees ceased to act, as such, and others were appointed in their place and stead, these successors did not, as such, acquire the legal title to the estate. Not vesting in them, it would revert to the grantor, or his heirs, until a court of equity should give title to the successors so appointed, if they have the right to demand it; as much so, whilst *Burrows* should be living, as after his decease.

3. That if the title, as trustee, can be considered as remaining in *Burrows*, after he ceased to act as trustee, others being appointed and exercising all the power and authority over the premises, which did or could belong to him, as such trustee, for a period of over thirty years, he declaring that he had no title, and claiming none, the legal title of *Burrows* will be barred, by the statute of limitation; or by the presumption of a release of his title, from such facts.

*McCurdy* and *Foster*, contra, remarked, That it appeared from the motion and was admitted, that the deed of *T. Green*, in *December*, 1794, conveyed the *legal title* of the premises to the grantees named in the deed; that the plaintiff is the sole survivor of those grantees; and that the defendants, having disseised the plaintiff, are in possession holding him out. Under these circumstances, the plaintiff is clearly entitled to a verdict, unless it be shewn, that he was divested of his title, before the trial. He might have been divested, first, by a deed of release from himself; or secondly, by adverse possession of other persons, for fifteen years, or more. The counsel then contended,

1. That there was no direct proof or claim that the plaintiff had given any deed of release; and if otherwise, it was a question of fact, proper for the jury to determine, and was distinctly submitted to them, by the court.

2. That the charge in relation to adverse possession, was equally unexceptionable. In the first place, the possession of the society, under the deed, for the uses mentioned therein, without the interference of the plaintiff, or any of the other trustees, was not an adverse possession. A possession pursuant to the grant, is not adverse. *Hanchett* v. *King*, 4 *Day*, 360, 2 *Smith's Lead. Ca.* 413. & seq. *Best on Presump.* 154. & seq. Secondly, the court distinctly submitted to the

*New-London,*
July, 1850.

Burrows
*v.*
·Holt.

jury for them to determine from the evidence, whether the plaintiff had been divested of his title, by an adverse possession, as the defendants claimed.

CHURCH, Ch. J.   The only question left by the jury and to be decided here, is, whether the defendants have acquired a title to the demanded premises, by adverse possession ?

The plaintiff, as the sole survivor of the original trustees or grantees, has now the legal title to the property in question, unless he has, in some way, released it, or unless he has lost it, by the hostile occupancy of the defendants.   But the jury has decided, that there has not been any voluntary relinquishment or release of title, either actual or presumed.

*Timothy Green* executed a deed to the plaintiff and others, as trustees of the *Methodist Society* in *New-London.*   All the grantees but the plaintiff, are dead ; and thus he claims his title.   The society, for whose use and benefit this deed was made, was not a corporate body,  and could not appoint a board of trustees, with legal capacity, or who could have legal successors ; and nothing appears, on this record, showing that any such body had ever existed, or did exist, when the deed to the trustees was executed, under any appointment made by the society.   It was but an ordinary deed of trust to the individuals named as grantees, for the only use and behoof of the *Methodist Society,* an unincorporated association. These grantees, therefore, were trustees only as the trust deed made them such.   They had a freehold interest of such a duration as was necessary to effect the purposes of the trust, and not limited to any contemplated continuance in office or power of the trustees, as officers of the society. This trust would continue, unless in some way renounced or extinguished, during the life-time, at least, of the persons designated as grantees.   No duties were required of these trustees.   They were passive, as trustees, constituted to preserve contingent remainders ; and the trust was created only to vest and preserve the legal estate, for the use of a body which could not take it.   It was not, therefore, necessary to the creation of this trust, or to the continuance of the legal title in the trustees, that they should have been even members of the *Methodist Society,* or have taken an active part

in its affairs, or have resided in the town of *New-London,* where the society was located.

As the title originally in the plaintiff, as one of the grantees, has not failed, by any act of his; has it been defeated, by the adverse possession of the defendants? We think it has not.

If the defendants could have had a legal existence, as official trustees of the society, as they claim, they have not exercised their trust adversely to the title and capacity of the plaintiff, as grantee; but in furtherance and support of the object of the same trust. They have not objected, but have permitted the *Methodist Society* to use and occupy the granted premises, in conformity with the grant; and so they have been occupied and used. If the defendants, or any predecessors, as agents of the association, have managed its concerns, although exclusive of the plaintiff's interference, yet consistently with the purpose for which this grant was made, this can not conflict with the plaintiff's legal title, but is entirely consistent with it. The defendants, although assuming to act officially, have in truth acted only as agents and private members of a voluntary association, and as such, have been in the use of the premises under the deed, and so have been confirming, and not defeating it.

If the *Methodist Society* had, or if the defendants or their predecessors had, acting as agents or trustees, diverted the property to a different use, in defiance of the trust, or appropriated it to a different religious community, or to a different charity; such an use, if continued and uninterrupted for more than fifteen years, would have defeated the plaintiff's title; but as no such conflicting use has been made of the property, no adverse title to it has been acquired, and the defendants are without a legal defence to the action.

The views expressed by the Judge, at the trial, were correct; and no new trial can be granted.

In this opinion the other judges concurred.

New trial not to be granted.